JULIE PARUCH, Respondent, v ROBERT PARUCH, Appellant

The defendant indicates in his brief that he has abandoned his appeals from the orders dismissed herein because those orders are brought up for review by his appeals from the judgment entered March 27, 1987, and the resettled judgment

entered March 30, 1987, and if the appeals from those orders had been perfected they would have been dismissed under *Matter of Aho* (39 NY2d 241). "Generally, separation agreements which are regular on their face are binding on the parties, unless and until they are put aside (2 Foster & Freed, Law and the Family, p 476; see, also, *Schmelzel v Schmelzel,* 287 NY 21, 26; 2 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], § 36, subd 1, p 36-3). Judicial review is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences in connection with the negotiation of property settlement provisions" *(Christian v Christian,* 42 NY2d 63, 71-72).

However, due to the existence of a fiduciary relationship between husband and wife, separation agreements are closely scrutinized by courts and are more readily set aside under circumstances that would be insufficient to nullify an ordinary contract *(Levine v Levine,* 56 NY2d 42). At bar the plaintiff alleged, and the court determined, that the separation agreement entered into by the parties was unconscionable and was the result of fraud and overreaching on the part of the defendant. This finding, however, is not supported by the evidence adduced at the hearing. Though $20,000 a year for maintenance and $10,000 a year for child support is not generous in view of the defendant's income at the time the agreement was entered into and the parties' preseparation standard of living, it is clearly not unconscionable in that "no person in his senses and not under delusion would agree to [it] nor [is it] so manifestly unfair as to shock the conscience *(Christian v Christian,* 42 NY2d 63, 71; *Gorman v Gorman,* 87 AD2d 674, mot to dismiss app granted 56 NY2d 804)" *(Wile v Wile,* 100 AD2d 932, 934). This is particularly so in light of the substantial assets given to the plaintiff, the plaintiff's interest in avoiding liability in connection with an impending tax audit, and the uncontroverted indication that the plaintiff was receiving more than was indicated by the terms of the written agreement. In addition, there was no evidence adduced to support the hearing court's determination that the attorney that represented the plaintiff at the signing of the agreement was there only at the connivance of the defendant in order to legitimize the agreement. In fact, the attorney testified that he was initially contacted by the plaintiff, who told him that her former attorney represented her during the negotiation of the agreement and she needed his assistance only to make sure that the agreement she was signing contained the provi-

sions to which she had previously agreed. In addition, he testified that he discussed the financial aspects of the agreement with the plaintiff, advised her that she was entitled to much more under the Equitable Distribution Law, and questioned the wisdom of entering into the agreement. Since the plaintiff did not testify on her own behalf, the trier of fact is permitted to draw the strongest inference against her that the foregoing evidence permits (see, Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137; Association of Bar v Randel, 158 NY 216). In any event, overreaching is not proven simply by the fact that the party seeking to set aside the agreement was not represented by independent counsel (Levine v Levine, 56 NY2d 42, supra; Tuck v Tuck, 129 AD2d 792; Surlak v Surlak, 95 AD2d 371, appeal dismissed 61 NY2d 906).

The evidence adduced at the hearing did establish that the financial statement submitted by the defendant at the time the separation agreement was executed did not accurately reflect his financial circumstances. However, the plaintiff failed to establish that she relied upon this alleged misrepresentation in entering into the separation agreement. Furthermore, the plaintiff was improperly permitted to assert the attorney-client privilege when the attorney who represented her at the signing of the agreement was questioned as to whether she indicated that she was aware of the defendant's actual financial situation and her reasons for entering into the agreement. That privilege was waived with respect to those communications when the plaintiff placed the subject matter of the communications in issue and because invasion of the privilege was required to determine the validity of the plaintiff's claim and application of the privilege would deprive the defendant of vital information (see, Village Bd. v Rattner, 130 AD2d 654; Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834). Here, too, the trier of fact is permitted to draw the strongest inference against the plaintiff that the opposing evidence will permit (see, Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, supra).

Finally, there is absolutely no evidence to support the hearing court's determination that the plaintiff signed the separation agreement "while she was in an emotional state which precluded her comprehension of her rights".

In sum, the plaintiff failed to establish that the separation agreement was unconscionable and was the result of fraud and overreaching on the part of the defendant. Thus the court erred in setting the separation agreement aside. However, the

plaintiff is entitled to any arrears in maintenance and child support due her under the separation agreement and judgment of divorce entered thereon and the matter is hereby remitted for a calculation of the same.

Since the parties agree that the issue of whether the court properly permitted the plaintiff to move to Florida with the parties' children, in violation of the "50-mile radius" provision of the separation agreement, is academic because the plaintiff has since returned to the New York City area, we decline to review that issue. Consequently, the propriety of the visitation provisions which were arrived at based upon the assumption that the plaintiff would be residing in Florida are also not properly before us. Essentially, the defendant's challenge with respect to the visitation provisions of the resettled judgment is based upon a change in circumstances, and should be raised by way of motion in the Supreme Court, Nassau County.

Finally we note that the Judicial Hearing Officer awarded the plaintiff's counsel $101,137.64 in counsel fees and expenses incurred during the course of the equitable distribution hearing. In light of the change in the parties' financial circumstances as a result of our decision, and in light of our determination that the plaintiff should not have prevailed on her application to set aside the separation agreement, we hereby remit this matter to the Supreme Court, Nassau County, for a new determination as to the amount, if any, of counsel fees to which the plaintiff is entitled (see, Domestic Relations Law § 237; see also, Borakove v Borakove, 116 AD2d 683; Apkarian v Apkarian, 39 AD2d 609). Thompson, J. P., Kunzeman, Rubin and Harwood, JJ., concur.